**In re JOTAN, INC. and Southland Container Corp., Debtors.**

**Bankruptcy Nos. 98–9633–BKC–3F7, 98–9632–BKC–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 12, 1999.

Michael G. Williamson, Kay, Gronek & Latham, LLP, Orlando, Florida, Alan A. Weiss, R. Raye Curry, Holland & Knight, LLP, Jacksonville, Florida, for movants.

Gardner F. Davis, Scott D. Richburg, Foley & Lardner, Jacksonville, FL, for Jotan.

George E. Ridge, Ridge & Lantinberg, P.A., Jacksonville, FL, for Bank.

Michael H. Traison, Donald J. Hutchinson, Miller, Canfield, Paddock, et al., Detroit MI, for unsecured creditors committee.

Elena L. Escamilla, United States Trustee, Orlando, FL, Gordon P. Jones, Jacksonville, FL, Chapter Seven Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on a Motion for Relief from Stay ("Motion") filed by John L. Sanders, William P. Blincoe, and Lester G. Gegenheimer ("Movants") on December 4, 1998. (Doc. 47.) A final hearing on this Motion was held February 4, 1999. Upon the representations of counsel and the evidence presented, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In December 1996, Jotan, Inc. ("Jotan") acquired the stock of Southland Container Packaging Corp. ("Southland") from Movants for approximately $30 million in a leveraged buyout; i.e. the purchase was facilitated with funds borrowed against the assets of Southland. Movants and Jotan entered a share purchase agreement ("Agreement") on November 19, 1996 under which Jotan purchased all of the stock of Southland Holding Company from Movants. Following the closing of the transaction, a number of disputes arose between the parties arising out of or related to the respective parties' obligations under the Agreement.

The Agreement contained an arbitration provision providing in pertinent part that:

(a) Any dispute, controversy or claim arising out of or relating to this Agreement, or a default hereunder, or any other transactions or activities resulting from or connected with the Agreement, shall be settled by arbitration in accordance with the Rules of Commercial Arbitration of the American Arbitration Association then in effect. . . .

[A]rbitration . . . shall be governed by the Federal Arbitration Act and the cases interpreting relevant provisions thereof.

In January of 1998, Jotan gave notice to Movants of a variety of claims against Movants including an accounting and breaches of representations and warranties by Movants with respect to the Agreement. Movants responded by providing Jotan with an arbitration notice that initiated the Arbitration Proceeding ("Arbitration") in Atlanta, Georgia, the venue provided for in the Agreement. Subsequently, the parties agreed to transfer the venue of the Arbitration to Houston, Texas.

Jotan responded to the arbitration notice with an answer, a petition for declaratory judgment, and a counter-claim setting forth claims against Movants. At the center of this Arbitration is $3 million dollars in an escrow account representing part of the purchase price and other payments, bonuses, and earnings not paid to Movants.

On July 1, 1998, a preliminary hearing was held in the Arbitration. On July 2, 1998, a letter was sent to the parties confirming dates to conduct discovery, exchange witness lists, file stipulated uncontested facts, and exchange exhibits to be used at a final hearing in the Arbitration. Additionally, notice was mailed scheduling this final hearing for November 30 through December 9, 1998. On November 10, 1998, Jotan and Southland ("Debtors") filed for protection under chapter 11 of the Bankruptcy Code, thus staying the Arbitration prior to its proceeding to a final hearing.

Movants presented testimony concerning the extent to which the Arbitration had already proceeded and a summary of both Movants and Jotan's claims in Arbitration. Arbitrator selection was complete. Discovery was near completion. No opposition to this Arbitration arose until the Motion for Relief from Stay was filed and Debtors attacked Arbitration by trying to establish that much time and effort was still required to proceed to final resolution in this Arbitration.

Movants request that the Court lift the automatic stay to allow the parties to conclude Arbitration for the purpose of timely adjudication on the issues before the arbitrator. This will result in a determination of the extent of Movants' claims in this bankruptcy case and in the escrow funds. Debtors request that the Court deny the motion for relief from stay without prejudice to the stay being modified at a later date. Debtors claim that any lifting of the stay at this point will result in undue hardship to Debtors. This purported hardship is based on claims that Debtors have not the time or resources to participate in this Arbitration and that Debtors will require new counsel to proceed in the Arbitration. Additionally, Debtors argue that interested parties should be provided opportunity to investigate potential fraudulent transfer claims against Movants arising from Jotan's purchase of Southland stock from Movants for approximately $30 million in the leveraged buyout transaction.

## CONCLUSIONS OF LAW

■ The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable. save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purpose of that other statute." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

A threshold matter in our decision is whether the pending issues in Arbitration are core matters in this bankruptcy case. The decision of whether these issues are core or non-core matters is important under precedent cases dealing with arbitration and bankruptcy. While there is not a uniform approach to resolving the conflict between enforcing federal bankruptcy and

arbitration laws, courts dealing with such issues distinguish core and non-core matters. *Hays & Co. v. Merrill, Lynch, Pierce, Fenner & Smith*, 885 F.2d 1149, 1156 (3rd Cir.1989). *See generally* Fred Neufeld, *Enforcement of Contractual Arbitration Agreements under the Bankruptcy Code*, 65 Am.Bankr.L.J. 525 (1991); Mette H. Kurth, Comment, *An Unstoppable Mandate and an Immovable Policy: The Arbitration Act and the Bankruptcy Code Collide*, 43 U.C.L.A.L.Rev. 999 (1996).

■ Bankruptcy courts have jurisdiction over "all civil proceedings arising under Title 11, or arising in or related cases under Title 11." 28 U.S.C. § 1334(b). This jurisdictional grant is divided into core and non-core proceedings.[1] Core proceedings have no existence outside of bankruptcy while non-core proceedings do not depend on bankruptcy law for their existence and are able to proceed in other courts. *In re Gardner*, 913 F.2d 1515 (10th Cir.1990).

If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Wood*, 825 F.2d 90, 97 (5th Cir.1987).

■ The issues raised by Movants and by Debtors' counterclaim in Arbitration are not issues that "arise under" or "arise in" a case under Title 11. The parties involved have not argued otherwise. The Arbitration deals with no issues involving rights created by federal bankruptcy law. Therefore, the Court finding the raised issues to be non-core matters will address whether an arbitration clause should be enforced in a bankruptcy case where an underlying arbitration involves resolution of non-core matters.

■ The Fifth Circuit, in addressing the standard for core issues, stated:

We think that, at least where the cause of action at issue is not derivative of the pre-petition legal or equitable rights

---

1. Core proceedings include, but are not limited to—

   (A) matters concerning the administration of the estate;

   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

   (C) counterclaims by the estate against persons filing claims against the estate;

   (D) orders in respect to obtaining credit;

   (E) orders to turn over property, of the estate;

   (F) proceedings to determine, avoid, or recover preferences;

   (G) motions to terminate, annul, or modify the automatic stay;

   (H) proceedings to determine, avoid, or recover fraudulent conveyances;

   (I) determinations as to the dischargeability of particular debts;

   (J) objections to discharges;

   (K) determinations of the validity, extent, or priority of liens;

   (L) confirmations of plans;

   (M) orders approving the use or lease of property, including the use of cash collateral;

   (N) orders approving the sale of property other than property, resulting from claims brought by the estate against persons who have not filed claims against the estate; and

   (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b) (1998).

possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. *Matter of National Gypsum Co.*, 118 F.3d 1056, 1069 (5th Cir.1997). "[W]here the federal policy in favor of arbitration inherently conflicts with and jeopardizes another federal policy to protect the rights of creditors, a case-by-case balancing of hardships should be performed." *In re FRG*, 115 B.R. 72, 75 (E.D.Pa.1990).

As noted above, the distinction between core and non-core matters is often discussed in cases dealing with the conflict presented when deciding whether to enforce arbitration clauses in bankruptcy cases. The Court, unwilling to use a straight line test for core and non-core matters, does find this distinction helpful in addressing the extent enforcement of an arbitration clause will conflict with the purpose and provisions of the Bankruptcy Code.[2]

Falling back to the strong federal policy favoring the enforcement of arbitration clauses, the Court finds no reason not to enforce the arbitration clause at issue in this case. The issues to be resolved, even if hinging on core matters, will not affect the purpose behind bankruptcy law. Rather, the Court finds that arbitration in this case will be helpful in the resolution of creditor claims and defining Movants' place in the bankruptcy case. The claims

in Arbitration are based on the Agreement between Debtors and Movants that arose pre-petition. The bankruptcy filing does not alter how these claims arose. The claims clearly could have existed outside of bankruptcy and are not based on any right created by the federal bankruptcy law. The Court notes that the timing of lifting the automatic stay is of limited importance to allow Debtors the ability to proceed to sell certain assets of their business without worry as to arbitrating claims. However, this time has passed and the Court finds no reason to stay arbitration any further.

Movants also argue that the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) requires abstention so that the matter may be resolved in the pending Arbitration. The Court finding the stay should be lifted based on the strong federal policy mandating enforcement of arbitration provisions need not address this argument.

■ Debtors argue that the automatic stay should not be lifted to allow interested parties to investigate potential fraudulent transfers and that "the Debtor in Possession, or the Chapter 7 Trustee if the case is converted, should have reasonable opportunity to examine the potential fraudulent transfer claims . . . and if feasible, to attempt, to recover the sale proceeds, including the money held in escrow." First, the Court notes that a trustee is bound to arbitrate just as a debtor would be. *Hays*, 885 F.2d at 1154 (trustee bound by arbitration clause signed by debtor pre-petition). Second, the Court does not find this argument to be ripe. Neither Debtors, nor other interested parties, have initiated an adversary proceeding seeking recovery of any fraudulent transfers. Finally, Debtors failed to

---

**2.** Cases dealing with non-core matters and enforcement of arbitration clauses in bankruptcy courts in the state of Florida are consistent in supporting enforcement and do so based upon the strong federal policy favoring the enforcement of arbitration clauses in general. *See In re Bicoastal Corporation*, 111

B.R. 999, 1001 (Bankr.M.D.Fla.1990); *In re Janes (Manuel v. American Family Life Assurance Co. of Columbus)*, 24 B.C.D 1495, 1993 WL 476493 (Bankr.M.D.Fla.1993) (arbitration clause should be enforced unless enforcement would adversely affect an underlying purpose of the bankruptcy code).

508

present evidence supporting that determinations made in Arbitration will adversely affect this aspect of their bankruptcy case.

CONCLUSION

On April 1, 1999, this case came on for hearing for a status conference and other various motions. At that hearing, the Court on its own motion converted this case from chapter 11 to chapter 7 after finding such action is in the best interest of all parties involved.

The Court finds the automatic stay should be lifted to allow the previously initiated Arbitration to be completed. The court is mindful that Debtors will need to retain counsel, who in turn, will require sufficient time to adequately review the factual background and legal issues involved in Arbitration. However, the parties involved can address timing issues with the arbitrator, who will be in the best position to set a schedule to conduct a fair arbitration proceeding.