**In re JOTAN, INC. and Southland Container Corp., Debtors.**

**Bankruptcy Nos. 98–9633–BKC–3F7, 98–9632–BKC–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 16, 1999.

George E. Ridge, Jacksonville, Florida, for Paribas.

Stephen Karotkin & Jacqueline Marcus, New York City, for Paribas.

Michael G. Williamson, Orlando, Florida, for Gegenheimer.

Alan M. Weiss & R. Raye Curry, Jacksonville, Florida, for Gegenheimer.

Gardner F. Davis, Jacksonville, Florida, for debtors.

James H. Post & Tonya L. Janney, Jacksonville, Florida, for Smith Hulsey & Busey.

Richard R. Thames, Jacksonville, Florida, for National Van Lines.

David E. Otero, Jacksonville, Florida, for Weyerhauser.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case comes before the Court to resolve a dispute concerning the election of a Chapter 7 Trustee pursuant to Section 702 of the Bankruptcy Code.[1] On May 10, 1999 the Motion of Paribas, as Agent for the Banks, to Resolve Election Disputes and to Confirm Election of Janet Thurston as Chapter 7 Trustee ("Motion") was filed by attorneys for Paribas[2]. (Doc. 218.) Counsel for John L. Sanders, William P. Blincoe, and the Estate of Lester G. Gegenheimer ("Selling Shareholders") submitted an Objection and Response to Paribas' Motion (Doc. 219) on May 10, 1999 and a Supplemental response (Doc. 237) on May 26, 1999. The law firm of Smith Hulsey & Busey, an unsecured creditor, submitted a Response in opposition to the Motion on June 9, 1999. (Doc. 246.) A hearing regarding this Motion was held June 14, 1999. Upon the representations of counsel and the evidence presented, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On April 1, 1999, the Court, *sua sponte*, converted this case from Chapter 11 to Chapter 7. At that time Gordon P. Jones was appointed interim trustee in this case by the United States Trustee from the panel of individuals serving as trustees in this division. On April 28, 1999, at 9:00 a.m., a meeting of creditors was convened, as authorized by Bankruptcy Rule 2003(a). At that meeting, Gordon P. Jones inquired whether any creditor or interested party would request an election. After George

[1]. For additional background in this bankruptcy case, see the Court's previously issued Findings of Fact and Conclusions of Law in this case at: *Jotan, Inc. v. Barnett, Thompson, McCririe, et al. (In re Jotan, Inc.)*, 229 B.R. 218 (Bankr.M.D.Fla.1998) (preliminary injunction issued preventing former employees and competitor from violating terms of employment agreements) and *In re Jotan, Inc. & Southland Container Corp.*, 232 B.R. 503 (Bankr.M.D.Fla.1999) (automatic stay lifted to allow completion of arbitration proceeding).

[2]. Paribas, formerly Banque Paribas, is before this Court on behalf of itself and as agent for a number of banks and/or financial institutions collectively having over twenty five million dollars in claims of which five million dollars was waived as unsecured in order to be able to elect a trustee. The Court recognizes these entities by the claims filed in Southland Container Packaging Corp., Case No.: 98–9632–3F7 and in Jotan, Inc., Case No.: 98–9633–3F7. BankBoston, N.A. filed a secured claim in the amount of $4,955,041.79; Paribas, f.k.a. Banque Paribas, filed an unsecured claim in the amount of $5,000,000.00, a secured claim in the amount of $5,647,950.84, and a priority secured claim in the amount of $7,900,000.00; Antares Capital Corporation filed a secured claim in the amount of $4,954,065.30; Bank Austria Creditanstalt Corporate Finance, Inc. filed a secured claim in the amount of $4,954,084.64; and BHF–Bank Aktiengesellschaft filed a secured claim in the amount of $4,954,086.67.

Ridge, Esquire, on behalf of Paribas, requested an election, Elena L. Escamilla, attorney for the United States Trustee, announced that she would preside over the meeting for the purposes of any election.

The Banks nominated Janet Thurston, a bankruptcy attorney, then presented a proposed compensation agreement[3], and were eventually the only creditor to vote in favor of Ms. Thurston. Included in the compensation agreement is a guarantee that Ms. Thurston would be compensated by Paribas should the Court deny her requested compensation. A number of creditors spoke out against Ms. Thurston being elected Trustee and spoke in favor of Mr. Jones remaining trustee. Mr. Ridge stated that the basis for the solicitation or the nomination of Ms. Thurston was availability and

> "the willingness to deal with compensation arrangements, and to pursue matters that the Bank, as the dominant unsecured creditor, believes are vital to the administration of the estate, as opposed to spurious and unfounded, ridiculous, purported theoretical causes of action against The Bank Group. She would have a more focused effort, as you might say, and won't settle out claims too cheaply to those that owe money to the estates in order to garner what would be an inadequate war chest to pursue claims against the banks, and

which we consider would be an improper course of conduct, anyway."

(Tr. for Meeting of Creditors held April 28, 1999 at 67–68.) On May 5, 1999, the United States Trustee filed its Report of Disputed Election of Trustee and this Court adopts that report (Court's Ex. 1) into these findings of fact.[4]

At the June 14, 1999 hearing, Paribas presented evidence in support of its position that it was entitled to vote and held the requisite percentage of unsecured claims to elect Janet Thurston as trustee. Counsel for Selling Shareholders called Ms. Thurston to testify concerning how she was contacted and her experience.[5] The proposed compensation agreement between the Banks and Ms. Thurston and a letter from Gordon P. Jones to Jacqueline Marcus, counsel for Paribas, were introduced into evidence. (Selling Shareholders Ex. 1 & 2.) The letter provides in pertinent part that:

> You [Jacqueline Marcus] and First Union have prevented me [Gordon P. Jones] from transferring the First Union DIP account to the estate's trust account. We have a well-documented difference of opinion as to the legitimacy of your and First Union's actions. Accordingly, I have no ability to control the funds at First Union, and it follows the estate does not have any funds available that can be used to compensate ... former employees for any additional ef-

3. Although Ms. Thurston signed the agreement prior to the 341 meeting of creditors, counsel for Paribas admit that the compensation arrangement would be subject to Court approval. (Tr. for Meeting of Creditors held April 28, 1999 at 65–67.)

4. The Court notes that at the hearing on June 14, 1999, the United States Trustee conceded that with the evidence presented concerning the Rice Partners' claim that Paribas would hold at least twenty percent (20%) of the claims in the amount specified in Section 702(a)(1) of the Bankruptcy Code in both the Southland and Jotan cases. Paribas argued that Rice Partners, scheduled as holding a large unsecured claim, should not be allowed to vote because they should be considered an insider under 11 U.S.C. § 702(a)(3). Upon

inquiry of the Court and after evidence was presented at the June 14, 1999 hearing, the United States Trustee stated that she believed the Rice Group was an insider and that the issue as to 11 U.S.C. § 702(a)(1) was resolved. Thus, the amount of Paribas' Section 702(a)(1) unsecured claim would exceed the requisite twenty percent (20%). However, the Court strongly notes the United States Trustee's position at the hearing that Paribas holds an interest materially adverse to the interest of general unsecured creditors. This Court agrees with that position.

5. The Court notes that the experience and qualifications of Ms. Thurston are not issue at this time. Rather, the Court is only dealing with whether the election is proper.

forts they provide in maximizing the recovery for the estate. As I am sure you are aware, much of the estate's recovery will ultimatelv be distributed to your client as a secured or unsecured creditor.

I understand that your client does not want to release its claim on the estate's assets out of concern that the estate will use those assets to pursue claims against The Bank Group that arise out of the LBO action.

Gordon P. Jones testified that he views the Bank's interest as materially adverse to the other general unsecured creditors. Mr. Jones noted the Bank's refusal to release funds held in accounts at First Union and the Bank's filing of a large priority claim. Also introduced into evidence was Paribas' Motion for Relief from the Automatic Stay. (Doc. 251.) This motion for relief states that "Paribas is undersecured, lacks adequate protection, and seeks an order lifting the automatic stay to permit Paribas to foreclose its interest in the *Jotan, Inc. v. Barnett* action, and pursue directly (without the Interim Trustee's involvement) the claims against the Defendants therein. The Estates do not have any equity in this cause of action."

Paribas asks the Court to "put an end to the unfair and unwarranted 'scorched earth' policy being pursued against the Banks" and to uphold the election of Janet Thurston as permanent trustee. (Doc. 245.) The parties in opposition seek that the Court find that the election was improper under Section 702 of the Bankruptcy Code and ask that Gordon P. Jones serve as permanent trustee.[6]

## CONCLUSIONS OF LAW

■ A trustee election dispute "requires a bankruptcy court to balance the need for an accurate resolution of fact-based ques-

tions at the initial stage of a case with the need for a speedy resolution of the dispute, and that it is both undesirable and unworkable to turn a trustee election into a full scale trial." *In re American Eagle Mfg.*, 231 B.R. 320, 330–331 (9th Cir. BAP 1999.) (citing *In re Tartan Const. Co.*, 4 B.R. 655, 658 (Bankr.D.Neb.1980)).

■ Section 702 of the Bankruptcy Code governs the election process of a chapter 7 trustee and provides that:

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

---

**6.** Smith Hulsey & Busey and Selling Shareholders identified legal support for this position in their filings with this Court as well as in their presentations and argument at the June 14, 1999 hearing. National Van Lines Co. and Weyerhauser Co., having an unsecured claim in excess of one million dollars, also argued against Paribas' Motion at that hearing.

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

11 U.S.C. § 702 (1998). *See In re Michelex Ltd.*, 195 B.R. 993 (Bankr.W.D.Mich. 1996) (providing an excellent overview of trustee elections). Pursuant to this section's procedures and voting requirements, creditors may elect a trustee at the meeting of creditors. The object of Section 702 "is to permit the general unsecured creditors to provide for the administration of the Chapter 7 estate by a trustee of their own choosing." *In re Nanvarok Seven, Inc.*, 148 B.R. 86, 87 (Bankr.D.D.C.1992).

■■■ Upon the United States Trustee's concession that Paribas would have the requisite amount of claims under Section 702(a)(1), the only issue this Court need address is whether Paribas holds an interest materially adverse to other creditors. The Bankruptcy Code does not contain a definition of the phrase "interest materially adverse" used in Section 702(a)(2). *In the Matter of NNLC Corp.*, 96 B.R. 7, 9 (Bankr.D.Conn.1989). The Court in *NNLC Corp.* states that:

> The House Report [FN3] and the Senate Report [FN4] which were submitted to Congress prior to the enactment of the Code indicate that a court will balance the competing factors in any specific instance to make its determination. Based upon the House Report the materially adverse phrase encompasses the purposes of a conflict of interest rule. Case law providing examples of what constitutes an interest materially adverse is meager. If a creditor has received a preference, the cases generally assume that such creditor's interest will be materially adverse to other creditors,

provided that the claim of preference is based on more than suspicion.

---

[FN3.] The House Report states:

Subsection (a) of this section [702] specifies which creditors may vote for a trustee. Only a creditor that holds an allowable, undisputed, fixed, liquidated, unsecured claim that is not entitled to priority, that does not have an interest materially adverse to the interest of general unsecured creditors, and that is not an insider may vote for a trustee. The phrase "materially adverse" is currently used in the Rules of Bankruptcy Procedure, Rule 207(d). It requires a balancing of various factors, such as the nature of the adverse interest, the size of the adverse interest, the degree to which it is adverse, and so on. Thus, a creditor with a very small equity position would not automatically be excluded from voting solely because he holds some equity in the debtor. His equity interest may be so small in relation to his interest as a creditor that it may be disregarded for the purposes of the conflict of interest rule contained in this phrase. The Rules of Bankruptcy Procedure also currently provide for temporary allowance of claims, and will continue to do so for the purposes of determining who is eligible to vote under this provision.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 378 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6334.

[FN4.] The Senate Report states:

Subsection (a) of this section [702] specifies which creditors may vote for a trustee. Only a creditor that holds an allowable, undisputed, fixed, liquidated, unsecured claim that is not entitled to priority, that does not have an interest materially adverse to the interest of general unsecured creditors, and that is not an insider may vote for a trustee. The phrase "materially adverse" is currently used in the Rules of Bankruptcy Procedure, rule 207(d). The application of the standard requires a balancing of various factors, such as the nature of the adversity. A creditor with a very small equity position would not be excluded from voting solely because he holds a small equity in the debtor. The Rules of Bankruptcy Procedure also currently provide for temporary allowance of claims, and will continue to do so for the purposes of determining who is eligible to vote under this provision.

S.Rep. No. 989, 95th Cong., 2d Sess. 92–93 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5878–79.

96 B.R. at 9–10 (citations omitted). *See In re Klein*, 110 B.R. 862 (Bankr.N.D.Ill.1990) (addressing the question of what constitutes material adversity); *In re New York*

*Produce American & Korean Auction Corp.*, 106 B.R. 42 (Bankr.S.D.N.Y.1989).

Paribas argues that there are no facts to support any claims that Paribas has an interest materially adverse to other unsecured creditors and that such claims are frivolous. However, as Paribas admits, Debtor's counsel hinted at the possibility of a preference action against Paribas. Subsequently, Gordon P. Jones, as interim trustee, filed a complaint against Paribas on May 18, 1999 challenging its secured status to potential proceeds from certain causes of action, the outcome of which could potentially benefit unsecured creditors in this case.[7]

The Court after looking at the totality of the circumstances and balancing various factors, such as the nature and size of Paribas' adverse interest, and the degree to which it is adverse, finds that Paribas has an interest materially adverse to the interests of other creditors. The evidence before the Court strongly suggests that Paribas is primarily concerned for their secured claims, a potential super-priority claim, and with protecting such claims with regards to all of Debtor's assets. Paribas will receive all of the assets to which Paribas is secured, but only a fraction of assets to which Paribas is deemed unsecured. This inherently creates a conflict with general unsecured creditors. Paribas would rather be secured in all of Debtor's assets, including potential recovery from the *Jotan v. Barnett* action, while general unsecured creditors would prefer Paribas be unsecured so unsecured creditors may receive some distribution. Paribas waived $5,000,000.00 of secured claims to become eligible to elect a trustee, but remains the only secured creditor and continues to

seek to protect Paribas' secured status while others challenge that status.

The Court notes the position taken by the United States Trustee at the June 14, 1999 hearing after the presentation of evidence that Paribas seemed to hold an interest materially adverse to other creditors. The Court also notes Paribas' request for relief from the automatic stay to foreclose an interest in the proceeds of litigation in which Paribas claims to be secured and the adversary proceeding initiated by the interim trustee against Paribas. In both of these matters Paribas will presumptively advocate a position that conflicts with potential benefits to unsecured creditors. The Court finds the totality of Paribas' actions and advocated positions to amount to Paribas having an interest materially adverse to that of the other unsecured creditors.

## CONCLUSION

For all of the foregoing reasons, Paribas' vote for Janet Thurston for trustee is invalidated due to an interest materially adverse to the creditors holding unsecured, nonpriority claims. In light of no trustee having been elected at the meeting of creditors, Gordon P. Jones, the interim trustee, shall serve as trustee in this case.

A separate order will be entered in accordance with these findings of fact and conclusions of law.

---

**7.** The United States Trustee brought up the point that Mr. Jones is subject to the sanctions of Bankruptcy Rule 9011 if this complaint was filed for improper purposes.