**In the Matter of NNLC CORP., Debtor.**

**Bankruptcy No. 2–88–00747.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 6, 1989.

Donald Lee Rome, and Eric Brunstad, Robinson & Cole, Hartford, Conn., for Suffield Bank, movant.

Joseph B. Collins, Hendel, Collins & Newton, Springfield, Mass., for debtor.

Martin W. Hoffman, Hartford, Conn., Interim Trustee.

Jeffrey G. Grody, Day, Berry & Howard, Hartford, Conn., for Metro–West Realty Co.

### MEMORANDUM OF DECISION ON MOTION FOR RESOLUTION OF ELECTION DISPUTE

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The question in this matter is a creditor's entitlement to vote for a candidate for trustee in a chapter 7 case. The creditor, Suffield Bank (Bank), has appropriately raised the issue by filing a Motion For Resolution Of Election Dispute after the United States Trustee, pursuant to Bankruptcy Rule X–1006(c),[1] informed the court in writing that at the meeting of creditors held pursuant to § 341 of the Bankruptcy Code (Code) a disputed election of a trustee was held. The following background is derived from the report of the United States Trustee, the case file, undisputed representations contained in the briefs and the oral arguments of the parties.

### II.

NNLC Corp., the debtor, on May 12, 1987 commenced operating a retail sales business for audio, electronic and related equipment at various locations in Connecticut, Massachusetts and New Hampshire. On that same date, the debtor and the Bank entered into loan agreements whereby the debtor borrowed $2,700,000.00 from the Bank and granted the Bank a security interest in the debtor's assets. The debtor terminated its business operations on June 17, 1988 when it surrendered its inventory to the Bank.

The Bank, together with two other creditors, on July 21, 1988 filed an involuntary petition against the debtor. The court, with the debtor's consent, entered an order for relief on September 9, 1988. The United States Trustee, on August 2, 1988, had appointed Martin W. Hoffman, Esq. from the panel of trustees as interim trustee. Hoffman, after his appointment and with the consent of the Bank, conducted an auction of the inventory the debtor had surrendered to the Bank, resulting in sale proceeds of $192,028.38. The Bank, on January 6, 1989, filed a proof of claim indicating that it held an unsecured claim of $2,333,-563.04 and a secured claim of $192,028.38, for a total claim of $2,525,591.42. The

---

1. Rule X–1006. MEETINGS OF CREDITORS OR EQUITY SECURITY HOLDERS

. . . . .

(c) *Report to the Court.* The United States trustee shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing of the dispute. Pending disposition of the dispute by the court, the interim trustee shall continue in office. If no motion for the resolution of the election dispute is made to the court within ten days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

proof of claim further stated: "Above characterization does not waive right to claim a security interest for a larger amount."

At the first meeting of creditors convened by the United States Trustee on January 9, 1989, the Bank requested an election of a trustee and voted its unsecured claim of $2,333,563.04 for the election of Howard L. Siegel, Esq. The debtor's bankruptcy schedules indicate unsecured debt of $1,154,966.80, other than the Bank's debt. No other nominations for trustee were made. The debtor and the interim trustee objected to the Bank's vote. They contended that the Bank was not eligible to vote because it held an interest materially adverse to the creditors of the estate in that (1) the Bank had received a voidable preference, (2) the Bank's security interest in estate assets was defective and avoidable, and (3) the Bank had claimed that its security interest continued in any assets that the estate might thereafter recover. At the hearing on the Bank's motion, in addition to the debtor and the interim trustee, an estate creditor, Metro–West Realty Co., appeared and argued that the Bank was ineligible to vote for a trustee.

### III.

Code § 702 provides the framework for the election of a trustee in a chapter 7 case. It states that a candidate for trustee is elected if at least twenty percent in amount of claims are voted and the candidate receives a majority in amount of claims of the votes cast. If a trustee is not elected, the interim trustee continues to serve as trustee in the case. Section 702(a) specifies the creditors who may vote:

> (a) A creditor may vote for a candidate for trustee only if such creditor—
>
>> (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
>>
>> (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
>>
>> (3) is not an insider.

### A.

■ A threshold argument advanced by the Bank in its brief, although not at oral argument, was that neither the debtor nor the interim trustee has standing to challenge the Bank's eligibility to vote. The Code and the Bankruptcy Rules do not indicate who has standing to object to the results of an election. The appearance at the hearing of Metro–West Realty Co., a claimed prepetition, nonpriority creditor of the debtor (as well as an alleged administrative expense claimant), to contend that the bank had an interest materially adverse to Metro–West Realty Co., probably moots the standing issue. In any event, although there is authority denying an interim trustee standing, *see In re G.I.C. Gov't Sec., Inc.*, 56 B.R. 105 (Bankr.M.D.Fla.1985), I agree with the most recent holding that an interim trustee has standing because he "is the optimal party to object to a creditor's claim for voting purposes since he is the representative of the estate and the purpose behind § 702 voting restrictions is to protect the bankruptcy estate." *In re Poage*, 92 B.R. 659, 666 (Bankr.N.D.Tex. 1988) (citations omitted).[2]

### B.

The Code does not contain a definition of the phrase "interest materially adverse" used in § 702(a)(2). The House Report[3]

---

**2.** The only opinion rendered since the enactment of the Code that addresses the issue of whether a debtor has standing in an election contest held that the debtor had such standing. *In re Blesi,* 43 B.R. 45, 48 (Bankr.D.Minn.1984).

**3.** The House Report states:

> Subsection (a) of this section [702] specifies which creditors may vote for a trustee. Only a creditor that holds an allowable, undisputed, fixed, liquidated, unsecured claim that is not entitled to priority, that does not have an interest materially adverse to the interest of general unsecured creditors, and that is not an insider may vote for a trustee. The phrase "materially adverse" is currently used in the Rules of Bankruptcy Procedure, Rule 207(d). It requires a balancing of various factors,

and the Senate Report[4] which were submitted to Congress prior to the enactment of the Code indicate that a court will balance the competing factors in any specific instance to make its determination. *See In re Cohoes Indus. Terminal, Inc.*, 90 B.R. 67, 70 (S.D.N.Y.1988). Based upon the House Report the materially adverse phrase encompasses the purposes of a conflict of interest rule. Case law providing examples of what constitutes an interest materially adverse is meager. If a creditor has received a preference, the cases generally assume that such creditor's interest will be materially adverse to other creditors, provided that the claim of preference is based on more than suspicion. *Waldschmidt v. SIVA Truck Leasing (In re Lang Cartage Corp.)*, 20 B.R. 534 (Bankr.E.D. Wis.1982); *In re Blesi*, 43 B.R. at 47; *In re Metro Shippers, Inc.*, 63 B.R. 593, 598 (Bankr.E.D.Pa.1986).

### C.

The Bank concedes that it received a payment of $20,625.00 on its debt from the debtor within ninety days before the filing of the involuntary petition. It argues that this apparent preferential payment would come within the exception of Code § 547(c)(2) as a timely interest payment made on a long-term loan during the ordinary course of business between the debtor and the Bank. Nationwide there exists a split of authority on the legal issue as

posed by the Bank, and there is no controlling authority in this circuit. *Compare Ragsdale v. The Citizens and Southern Nat'l Bank (In re Control Elec. Inc.)*, 91 B.R. 1010, 18 Bankr.Ct.Dec. (CRR) 515 (Bankr.N.D.Ga.1988) *with In re Smith–Douglass, Inc.*, 842 F.2d 729, 730 (4th Cir. 1988) (*per curiam*). The preference issue, as presented on this record, satisfies the standard of being more than one based on suspicion.

The Bank contends notwithstanding that the allegation of preference may be founded on more than a suspicion—rendering the Bank's interest adverse—the interest is not *materially* adverse in view of the relative smallness of the preference ($20,625.00) in comparison either with the Bank's entire unsecured claim ($2,333,-563.04) or the total listed unsecured claims held against the estate (roughly $3,500,-000.00). This interpretation of materiality is not convincing. It seems to me much more appropriate to determine the materiality of the adverse interest based solely upon its dollar amount, without comparison with other claims as urged by the Bank. In that light, a conflict between the Bank and the debtor's estate involving $20,625.00 is clearly material. This approach better serves the goal of limiting creditors' concern on how the trustee of an estate is to be selected to replace the interim trustee.

such as the nature of the adverse interest, the size of the adverse interest, the degree to which it is adverse, and so on. Thus, a creditor with a very small equity position would not automatically be excluded from voting solely because he holds some equity in the debtor. His equity interest may be so small in relation to his interest as a creditor that it may be disregarded for the purposes of the conflict of interest rule contained in this phrase. The Rules of Bankruptcy Procedure also currently provide for temporary allowance of claims, and will continue to do so for the purposes of determining who is eligible to vote under this provision.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 378 (1977), *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 5787, 5963, 6334.

**4.** The Senate Report states:
 Subsection (a) of this section [702] specifies which creditors may vote for a trustee. Only

a creditor that holds an allowable, undisputed, fixed, liquidated, unsecured claim that is not entitled to priority, that does not have an interest materially adverse to the interest of general unsecured creditors, and that is not an insider may vote for a trustee. The phrase "materially adverse" is currently used in the Rules of Bankruptcy Procedure, rule 207(d). The application of the standard requires a balancing of various factors, such as the nature of the adversity. A creditor with a very small equity position would not be excluded from voting solely because he holds a small equity in the debtor. The Rules of Bankruptcy Procedure also currently provide for temporary allowance of claims, and will continue to do so for the purposes of determining who is eligible to vote under this provision.
S.Rep. No. 989, 95th Cong., 2d Sess. 92–93 (1978), *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 5787, 5878–79.

### D.

 The security agreement executed by the Bank and the debtor provided that the debtor granted a security interest to the Bank in property "described in Schedule A annexed hereto, and made a part hereof." The Bank acknowledges that no "Schedule A" was annexed to the security agreement. It contended at oral argument that legal doctrine exists which will remedy this defect. As in the instance of the preference question, I conclude that the apparent right of a trustee to use his "strong arm" power to attack a creditor's position as a secured creditor for a portion of its debt will render that creditor's unsecured interest materially adverse.

The Bank again argues that the size of its secured claim ($192,028.38) is so small compared to the size of the total unsecured claims in the estate that the degree of potential adverseness is minor. I do not accept this contention for the reasons set forth in Section C, *supra*.

### E.

 The concluding argument of the respondents is that the Bank's express reservation of its right to claim a secured position for an amount larger than set out in its proof of claim renders the Bank ineligible to vote as an unsecured creditor. I find this objection has merit.

The Bank stated at oral argument that it is concerned that the estate trustee vigorously investigate possible causes of action for malfeasance the trustee may have against persons involved with the debtor. The possibility exists of a conflict between the Bank and the estate as to the status of any proceeds received by the estate. The Bank, accordingly, may not hold a "fixed" unsecured claim within the meaning of § 702(a)(1) because its proof of claim asserts a secured claim on all assets up to $2,525,591.42. *Cf. In re Phillips*, 24 B.R. 715, 718 (Bankr.E.D.Calif.1982) (Creditor who files two proofs of claim for one debt, one as secured claim, one as unsecured claim, and attaches documents to proofs indicating that he claims entire debt as secured, is not eligible to vote for a trustee).

### IV.

For all of the foregoing reasons, the Bank's vote for a candidate for trustee is invalidated as the Bank holds an interest materially adverse to the creditors holding unsecured, nonpriority claims. In light of no trustee having been elected at the meeting of creditors, the interim trustee shall serve as trustee in this case. It is

SO ORDERED.