In re USA CAPITAL, LLC, a Colorado limited liability company, f/k/a/ USA Leasing, LLC, EIN 84–1315718, Debtor.

No. 00–14495–SBB.

United States Bankruptcy Court, D. Colorado.

Aug. 10, 2000.

Jane Frey, Office of the United States Trustee, Denver, CO, for U.S. Trustee.

Edwin G. Perlmutter, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Compass Bank.

James L. Huemoeller, LeBoeuf Lamb Greene & MacRae LLP, Denver, CO, for Credit Suisse First Bank Boston Mortgage.

Jay Smiley, Lindquist, Vennum & Christensen PLLP, Denver, CO, for Harvey Sender, Chapter 7 Trustee.

Gregory L. Williams, Block Markus Williams, L.L.C., Denver, CO, for Linc Capital, Inc. and Prime Leasing, Inc.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the United States Trustee's ("UST") Report of Disputed Trustee Election, (2) Linc Capital, Inc. ("Linc"), and Prime Leasing, Inc.'s ("Prime") Motion for Resolution of Disputed Trustee Election, (3) Chapter 7 Trustee's Response to UST's Report, UST's Recommendation and Motion for Resolution, (4) Chapter 7 Trustee's Objection to Claims of Prime and Linc for Purposes of Voting in Election of Trustee, (5) Linc's and Prime's Statement in Support of Election of Douglas W. Jessop as Permanent Chapter 7 Trustee, and (6) Credit Suisse First Boston Mortgage Capital's ("Credit Suisse") Response to Motion for Resolution of Disputed Trustee Election. The Court, having reviewed the file and being advised in the premises, enters the following findings of fact, conclusions of law and order.

The central issue presented to the Court in this dispute is the propriety of an election of a Chapter 7 trustee. The trustee election in this case raises the following questions: (a) whether the procedures and timing of the election were fair and satisfactory in terms of due process, and (b) which of three different voting blocks of creditors were qualified and entitled to vote for the two different trustee candidates of this estate. For the reasons stated on the record in open Court on July 21, 2000, which reasons and ruling are adopted and incorporated herein, and for the reasons recited below, this Court concludes that (1) the election process was conducted properly and satisfied principles of due process, (2) *no* claims/claimants voting at the election were qualified and entitled to vote at the election, and (3) the Interim Chapter 7 Trustee, Harvey Sender ("Mr. Sender"), shall remain and serve as the Trustee in this case.

## BACKGROUND

On April 24, 2000, an involuntary petition was filed under Chapter 7 of the Bankruptcy Code which pertained to a company related to the Debtor, USA Holdings, Inc. ("USA Holdings"). USA Holdings is the 100% owner of Debtor. The USA Holdings case was designated as Case Number 00–14620–SBB. On May 8, 2000, a Confession of Involuntary Petition and Request for Order for Relief under Chapter 7 of the Bankruptcy Code was filed. On May 10, 2000, this Court entered its Order for Relief and Procedure in Involuntary Case. Mr. Sender was appointed the interim Chapter 7 Trustee in the USA Holdings case.

USA Capital, LLC ("Debtor") filed for relief under chapter 11 of the United States Bankruptcy Code on April 21, 2000. Thereafter, on May 18, 2000, on motion filed by the Debtor, the Debtor's case was converted to Chapter 7. Mr. Sender was appointed as the interim Chapter 7 Trustee in the Debtor's case.

On May 18, 2000, the Debtor filed its Statement of Financial Affairs and Schedules. The Debtor's Schedule F—Creditors Holding Unsecured Nonpriority Claims—consisted of 78 pages and 3,794 claims. Of all of the claims, only 257, or less than one percent, were for liquidated amounts. The total dollar amount of liquidated claims as evidenced by Schedule F is $36,479,376.00. *All of* the liquidated claims are scheduled as disputed by the Debtor. The liquidated claims of Credit Suisse, Linc and Prime are scheduled as disputed claims.

On May 19, 2000, this Court held a hearing to consider the status of the Debtor's case and the Chapter 7 Trustee's Emergency Motion for Authorization to Operate Business of Debtor for a Limited Period of Time. At this time, the Court was advised by Elizabeth Brown, counsel for the now defunct Official Unsecured Creditors Committee in the Chapter 11 proceeding, that there was a strong likelihood that there would be a trustee election held in this case in light of Mr. Sender's involvement as Trustee in the USA Holdings case.

The initial Meeting of Creditors was set for June 16, 2000. On June 15, 2000, one day prior to the Meeting of Creditors, Linc and Prime each filed Proofs of Claims. Linc's filed Proof of Claim is in the amount of $4,431,532.95. Prime's filed Proof of Claim is in the amount of $4,350,000.00. Prime's Proof of claim also included in the total claim a $750,000.00 claim purportedly for a liquidated conversion claim.

Two other creditors, Credit Suisse and Compass filed written statements setting forth their claims with the Court prior to the Meeting of Creditors. Specifically, Credit Suisse filed its Statement Regarding Right to Vote on June 16, 2000 at 10:32 a.m. Credit Suisse asserted a claim in the amount of $29,510,910.98 arising out of a guaranty, dated November 2, 1999, executed by the Debtor related to obligations owed by an affiliate, USA CSFB Warehouse, LLC. The obligation is alleged to be unsecured as to the Debtor, although USA CSFB Warehouse had granted Credit Suisse a lien on all of its assets to secure the obligation to Credit Suisse. Compass Bank filed its Statement Pursuant to Rule 2003(b)(3) on June 16, 2000 at 10:50 a.m. By its Statement, Compass Bank asserted a total claim of $1,774,224.34. The sum consisted of $1,751,407.38 in principal and $22,816.96 in interest. Compass Bank further advised that it believed that $700,000 to $1,000,000 of its debt may be unsecured.

At approximately 11:15 a.m., on June 16, 2000, the Section 341 Meeting of Creditors was called to order. Soon after the commencement of the Meeting of Creditors, counsel for Prime and Linc, Mr. Gregory L. Williams, made a request for an election of a permanent Chapter 7 Trustee. Mr. Williams, on behalf of his clients, nominated Douglas Jessop as a candidate for the Chapter 7 Trustee. Ms. Jane E. Frey, as representative of the UST, served as the presiding officer for the trustee election. Credit Suisse and Compass Bank, f/k/a MegaBank ("Compass") appeared through counsel and orally requested that the UST adjourn and continue the trustee election to a date in the future. After hearing argument on the issue, the presiding officer denied the request and proceeded to conduct the trustee election.

Six creditors appeared and voted at the trustee election. Of the six voting creditors, only two, Prime and Linc had filed formal proofs of claims prior to the commencement of the Meeting of Creditors. Compass Bank and Credit Suisse had, as permitted by the Federal Rules of Bankruptcy Procedure, filed their respective statements in lieu of formal proofs of claims. The two remaining voting creditors, a Mr. Ken Valis and a Mr. W.R. Jones, did not file proofs of claims or statements of their claims. At the election, all of the six claims represented at the election were subject to oral objections. These objections were, in good measure but not exclusively, founded on the generally acknowledged condition of

the Debtor's books and records: poorly kept, neither accurate nor reliable.

As evidenced in the transcript of the Meeting of Creditors, the following specific objections were lodged against the voting creditors:

- Ken Valis: Counsel for Prime and Linc objected to Mr. Valis' vote for the reason that Mr. Valis had not filed a proof of claim. In addition, counsel for Credit Suisse objected to Mr. Valis' vote as he is an insider of the Debtor. Mr. Valis is a shareholder of the Debtor.

- W.R. Jones: Counsel for Prime and Linc made a general objection that any creditor who had not filed a proof of claim was not eligible to vote. Counsel for Credit Suisse objected to Mr. Jones vote as he contends that Mr. Jones is an insider of the Debtor. Mr. Jones was a former director of Debtor.

- Compass Bank: Counsel for Prime and Linc objected to the Compass Bank claim on the basis that the claim is not liquidated, the amount of the claim is unknown, and the claim cannot be determined from the Statement filed by Compass.

- Linc: Mr. Sender objected to the ballot filed by Linc for the reason that there were disputes as to the amount and allowance of the claim supporting the ballot. Mr. Sender alleged that the Debtor's records reflected that (1) Linc held a claim in a maximum amount of $273,000.00; (2) the claim was oversecured; (3) Linc received two million dollars in December of 1999 in exchange for which it was required to tender paper to the Debtor and did not do so; and (4) the Debtor had claims against Linc. Counsel for Credit Suisse joined in Mr. Sender's objection.

- Prime: Mr. Sender objected to the ballot filed by Prime for the reason that there were disputes as to the amount and allowance of the claim supporting the ballot. Mr. Sender alleged that the claim was a non-recourse obligation as to the Debtor; the maximum amount of the claim in any circumstance was two million dollars; and any claim for fraud and conversion was unliquidated. Counsel for Credit Suisse concurred with Mr. Sender and stated further that, in general, any claim based on fraud and punitive damages was unliquidated.

- Credit Suisse: Counsel for Linc and Prime objected to the Credit Suisse claim, in part, on the ground that the claim was not supported by a formal proof of claim. In addition, counsel alleged that the claim could not be determined from Credit Suisse's statement. Furthermore, the Debtor itself scheduled the claim as disputed. One of Debtor's representatives, Dave Anderson, at the Meeting of Creditors indicated that the Debtor's accounting records lacked credibility and the claim of Credit Suisse was subject to a final accounting and offset.

As a result of the Disputed Trustee Election, the UST, on June 20, 2000, in accordance with Fed.R.Bankr.P. 2003(d)(2), filed his Report of Disputed Trustee Election and also his Recommendation on Disputed Trustee Election. Linc and Prime filed their joint Motion for Resolution of Disputed Trustee Election on June 20, 2000. On June 27, Mr. Sender filed his Response to UST's Report, UST's Recommendation and Motion for Resolution. On June 30, 2000, Mr. Sender filed his Objection to Claims of Prime and Linc for Purposes of Voting in Election of Trustee. Also, on June 30, 2000, Linc's and Prime's Statement in Support of Election of Douglas W. Jessop ("Mr. Jessop") as Permanent Chapter 7 Trustee. On June 30, Credit Suisse also filed its Response to Motion for Resolution of Disputed Trustee Election.

## ISSUES

The issues before the Court are narrow and defined. First, was the trustee elec-

tion conducted in a manner consonant with (a) due process and (b) Fed.R.Bankr.P. 2003 and 11 U.S.C. § 702? Second, which of the creditors were qualified and entitled to vote in the trustee election and, consequently, who should be the duly elected or designated Trustee for this Debtor: (1) Mr. Jessop, for whom Linc and Prime voted, or (2) Mr. Sender for whom Credit Suisse and Compass Bank voted?

The Court also believes that it is important to set forth the question which is *not* before the Court. That is, the issue is not what, if any, conflicts of interest—actual or potential—may confront the interim trustee, Mr. Sender. Furthermore, the issue is not whether Mr. Sender is now, or anticipated to be, biased, not objective or fair in the case administration, or not otherwise fit, qualified, or competent to serve as Trustee in this case or circumstance. Based upon the statements of Mr. Williams at the hearing in regard to this matter, these issue's—particularly the issue of potential conflicts between the two related Debtors, USA Capital, LLC and USA Capital Holdings, Inc.—seem be the real reason behind Linc's and Prime's effort to elect Mr. Jessop as a replacement for the Interim Trustee, Mr. Sender. However, these specific issues are not properly before the Court. They are more properly framed as a request for removal of a trustee, or other similar relief, under 11 U.S.C. § 324 and Fed.R.Bankr.P. 2012.

## *DISCUSSION*

### 1. *Due Process*

The Court concludes that the procedure undertaken by the UST, and the timing of that procedure, was proper, legally sufficient and not in violation of principles of due process. Bankruptcy is, necessarily, a fast-paced procedure and it does not tolerate delay well. Bankruptcy cases, contested matters, and many adversary proceedings are "real time" litigation. They often require prompt, if not immediate, attention. Frequently, issues must be quickly addressed, and disputes must be timely resolved. Failure to do so may doom a case or jeopardize rights or interests of parties. Bankruptcy and its issues are not "autopsy litigation." Often there is not a full opportunity to "look back," to carefully dissect a past event, or to scrupulously examine all relevant history or records of a debtor or given situation.

 Meetings of Creditors, pursuant to 11 U.S.C. § 341, are necessarily conducted at the onset of a bankruptcy case. The procedure for the election of a trustee, if one is held at all, is specifically set forth in 11 U.S.C. § 702 and Fed.R.Bankr.P. 2003(b)(3) and an election is to be conducted at the beginning of a case in conjunction with the Meeting of Creditors. These sections of the Code and Rules—and the entire trustee selection process—are designed for prompt, streamlined and effective selection of a trustee. The selection process is designed to move swiftly—but, leavened with ample and effective safeguards to satisfy principles of due process. In fact, there is some authority suggesting that creditors may *actually lose* their right to an election if the election is not conducted at the initial Meeting of Creditors. *See, Matter of Blanchard Management Corp.,* 10 B.R. 186, 189 (Bankr.S.D.N.Y.1981).

 Counsel for creditors are, or should be, cognizant of the provisions of the Bankruptcy Code, Bankruptcy Rules and applicable case law regarding selection/election of a trustee. The Code and Rules, in fact, are structured to ameliorate problems creditors may face in contested trustee elections by establishing a specific procedure by which trustee disputes can be addressed with dispatch. Ms. Frey heard argument on the issue; Creditors' Committee counsel, Ms. Brown, announced early on in the case the probability of a disputed trustee election; and the contending parties timely filed documents and appeared at the Meeting of Creditors. No good cause or persuasive reason has been advanced as to why the election should have been postponed.

## 2. Selection of the Chapter 7 Trustee

### a. Eligibility to Vote

■ Prime and Linc advocate that, because they were the only entities voting who actually filed proofs of claims, this Court should disallow all other voting creditors. While formal Proofs of Claims were, indeed, filed by Linc and Prime prior to the hearing, that does not give them more (or less) weight than the statements filed by Credit Suisse and Compass Bank at the Meeting of Creditors. Rule 2003(b)(3) provides that a creditor may vote "if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote ..." The written statements of Credit Suisse and Compass were acceptable—particularly in view of (1) the accelerated nature of bankruptcy; (2) the abbreviated procedure specified in 11 U.S.C. § 702 and Rule 2003; and (3) express provisions allowing filing of statements in lieu of proofs of claim. Moreover, this Court is not aware of any obligation it has to fix with certainty and finality claims of creditors early in the case. Indeed, full or dispositive claims hearings can be complicated and time-consuming; they require considerable preparation. They are not appropriate at these earliest stages of a case.

Pursuant to 11 U.S.C. § 702(a), a creditor may vote for a candidate for trustee only if such creditor:

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

■ It is uncontested that *all* of the claims are disputed. The question becomes, however, in this situation, are the dispute(s) of claims "bona fide," or otherwise arguable such that—at least at the outset of the case and without holding a full-fledged claims hearing—they can be properly deemed *disputed* claims. A review of case law addressing this subject suggests that a dispute as to a particular claim need not, necessarily, be a bona fide dispute, but only a dispute. *In re San Diego Symphony Orchestra Association,* 201 B.R. 978, 983 (Bankr.S.D.Cal.1996). In the *San Diego Symphony* case, the Court held that the test for determining whether a claim is disputed "is no more than the bona fide dispute assessment of § 303(b), and it may well be *less* than that." *Id.* (emphasis added). While this Court believes that the standard for determining whether a claim is disputed may be less than the bona fide dispute standard of 11 U.S.C. § 303(b), this Court, nevertheless, believes that, at a minimum, a dispute must not be groundless, frivolous or interposed for improper purposes. *See, e.g., In re Centennial Textiles, Inc.,* 209 B.R. 31, 34 (Bankr.S.D.N.Y.1997) ("an unsupported allegation of a dispute regarding a claim is insufficient to disqualify a creditor's claim for qualifying a request for an election, or for voting").

■ The claims in question are all subject to disputes which are not groundless, frivolous or, it appears, interposed for improper purposes. *See* the discussion of the claims objections *supra* p. 887. This conclusion is, in large part, the result of certain stipulated facts, unrefuted offers of proof and reasonable inference drawn by the Court. First, it is acknowledged by virtually all of the parties that the Debtor's books and records were very poorly maintained and neither accurate nor reliable. Second, the business of this Debtor was the creating, selling and/or servicing of personal property leases which are, in and of themselves, difficult and uncertain as to status, enforceability, and measure of damages, if any. Third, some claim(s) are, at least in part if not in whole, secured by

collateral which is difficult to identify and value. Fourth, a secured creditor(s) is alleged to be an interest holder with interests adverse to unsecured creditors. *See* 11 U.S.C. § 702(a)(2). Fifth, certain claim(s) are predicated on allegations of Debtor's fraud, which, by their very nature, are not fixed or liquidated. This Court finds that every voting claimant holds claims which are—based on the record, documents filed with the Court and the exhibits presented—clearly not liquidated and fixed claims; they are disputed claims. Thus, in accordance with 11 U.S.C. § 702(a)(1), Compass Bank, Credit Suisse, Linc and Prime are simply not eligible to vote.

The two remaining voters, Mr. Valis and Mr. Jones, are also not eligible to vote. Neither Mr. Valis nor Mr. Jones had filed a proof of claim or statement prior to the election. Fed.R.Bankr.P. 2003(b)(3). In addition, it appears that Mr. Jones is or was an insider of the Debtor. 11 U.S.C. § 702(a)(3).[1] At the Meeting of Creditors, Mr. Jones disclosed that he was—in addition to being a purported creditor of the Debtor—a former director of the Debtor. Furthermore, even if Mr. Jones were eligible to vote, the record reflects that he did not identify on his ballot his trustee candidate of choice.

b. *The Chapter 7 Trustee is Not Precluded from Participating in the Disputed Trustee Election*

At the trustee election, no party raised the issue of the standing of Mr. Sender, as interim Chapter 7 Trustee, to object to claims. This issue is noted by the UST in his Recommendation on Disputed Trustee Election and in his Report of Disputed Trustee Election. This Court holds that Mr. Sender—as Trustee of USA Holdings and Interim Trustee of this Debtor—is not precluded from participating and raising questions about the elec-

tion. *In re Poage*, 92 B.R. 659, 663 (Bankr.N.D.Tex.1988) (the interim trustee is the optimal party to object to a creditor's claim for voting purposes since he represents the estate and examines claims for allowance purposes under 11 U.S.C. § 502(a)); *but see, Matter of G.I.C. Government Securities, Inc.,* 56 B.R. 105, 108 (Bankr.M.D.Fla.1985) (the interim trustee lacks standing to challenge a creditor's right to hold an election). Here, Mr. Sender is in a unique position, as fiduciary to all creditors in both cases, to review, and as necessary, object to claims allowance for voting purposes. 11 U.S.C. § 704(5).

### CONCLUSION

1. The election process was conducted properly by the presiding officer of the United States Trustee in accordance with Fed.R.Bankr.P. 2003 and 11 U.S.C. §§ 341 and 702. Furthermore, the procedure afforded creditors due process under the law.

2. All voting creditors were ineligible to vote according to the terms of 11 U.S.C. § 702(a). As a result, all votes for Mr. Jessop and Mr. Sender are disqualified. Pursuant to 11 U.S.C. § 702(d), since a trustee was not elected in this procedure, Mr. Sender, the Interim Trustee, shall serve as the trustee in this case.

THEREFORE IT IS ORDERED that Mr. Sender shall remain and serve as the trustee in this case.

---

1. 11 U.S.C. § 101(31)(b) provides that if the debtor is a corporation the following persons are considered insiders: (1) a "director of the debtor"; (2) an "officer of the debtor"; or (3) a "person in control of the debtor."