**In re AMHERST TECHNOLOGIES, LLC, et al.,[1] Debtors.**

**No. 05–12831–JMD.**

United States Bankruptcy Court, D. New Hampshire.

Jan. 5, 2006.

---

1. The related debtors are the following entities: Amherst, LLC, Bk. No. 05–12833–JMD; Technology Consulting Services, Inc., Bk. No. 05–12834–JMD; Amherst Distribution Services, LLC, Bk. No. 05–12835–JMD; AmherstGOV, LLC, Bk. No. 05–12837–JMD; Amherst Computer Products SouthWest, LP, Bk. No. 05–12838–JMD; AmherstSE, LLC, Bk. No. 05–12839–JMD; Amherst LA, LLC, Bk. No. 05–12840–JMD; AmherstWest, LLC, Bk. No. 05–12841–JMD; ACP Sales, LLC, Bk. No. 05–12842–JMD; and ACP SalesSE, LLC, Bk. No. 05–12843–JMD.

Geraldine Karonis, Assistant United States Trustee, for Phoebe Morse, United States Trustee.

Charles M. Tatelbaum, Adorno & Yoss LLP, Fort Lauderdale, FL, for Avnet, Inc., Creditor.

Steven E. Grill, Charles R. Powell, III, Devine, Millimet & Branch Professional Association, Manchester, NH, for Francis G. Conrad, Elected Chapter 7 Trustee.

Olga L. Bogdanov, Worcester, MA, Interim Chapter 7 Trustee.

Robert A. White, Murtha Cullina LLP, Hartford, CT, for Interim Chapter 7 Trustee.

## MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

### I. INTRODUCTION

Before the Court are two pleadings that require the Court to resolve a disputed

chapter 7 trustee election in these eleven jointly administered chapter 7 cases. The first is the Preliminary Objection of Francis G. Conrad Seeking an Order Declaring Francis G. Conrad as Permanent Chapter 7 Trustee (Doc. No. 363) (the "Resolution Motion"). The second is the Report by the United States Trustee of Disputed Chapter 7 Election (Doc. No. 367) (the "Election Report"). The Court held a preliminary status hearing on the Resolution Motion and Election Report on December 15, 2005, and a final hearing on December 29, 2005. At issue before the Court is whether Francis G. Conrad ("Mr. Conrad") has been elected the permanent chapter 7 trustee in these jointly administered cases.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS AND PROCEDURAL HISTORY

On July 20, 2005, the eleven above-captioned debtors filed chapter 11 petitions in this Court. On July 21, 2005, the Court ordered their joint administration in accordance with Federal Rule of Bankruptcy Procedure ("Rule") 1015(b) and Local Bankruptcy Rule 1015. On October 19, 2005, the Court granted the assented to oral motion of the United States Trustee (the "UST") to convert these cases to chapter 7 effective October 21, 2005.

On October 21, 2005, the UST appointed Olga Bogdanov as the interim chapter 7 trustee (the "Interim Trustee") for all eleven jointly administered debtors (the "Debtors"). On October 28, 2005, the Court approved the Interim Trustee's retention of counsel, and, on November 1, 2005, the Court approved the retention of Verdolino & Lowey ("V & L") as her accountants.

Upon conversion of the case, the Clerk's Office noticed the meetings of creditors in the jointly administered chapter 7 proceedings for November 28, 2005, at 11:00 a.m. (collectively the "Creditors Meeting"). On November 28, 2005, at 10:05 a.m., the Interim Trustee filed Chapter 7 Trustee's Omnibus Objection to Claim (Doc. No. 333) (the "Omnibus Objection") to the claim of Avnet, Inc. ("Avnet") which stated:

> The Trustee objects to the Proof of Claim of Avnet, Inc. filed on November 17, 2005 in the amount of $5,349,896.78. As grounds for this objection, the Trustee states that the claimant received a preferential transfer from the Debtors, and pursuant to 11 U.S.C. § 502(d), the claim should be disallowed in its entirety.

On November 28, 2005, at 10:48 a.m., Avnet filed a verified statement regarding proxies given to it by Ciprico, Inc./Huge Systems ("Ciprico") and Optical Laser, Inc. ("Optical Laser") for purposes of acting on their behalf at the Creditors Meeting, including voting for a permanent chapter 7 trustee (Doc. No. 334) (the "Proxies"). Avnet, Ciprico, and Optical Laser had been three of five members of the Official Committee of Unsecured Creditors (the "Committee") in the prior chapter 11 proceeding. Avnet had served as chair of the Committee. Prior to the Creditors Meeting, Avnet filed a proof of claim in the amount of $5,349,896.78, Ciprico filed a proof of claim in the amount of $306,768.23, and Optical Laser filed a proof of claim in the amount of $146,665.19. The Debtors' schedules listed total unsecured claims in the amount of $22,079,738.25.

The Interim Trustee commenced the Creditors Meeting in these eleven cases at 11:00 a.m. on November 28, 2005. Present at the Creditors Meeting were: the Assistant UST; Debtors' former chief financial officer; Debtors' counsel; V & L; creditors IBM, Hewlett Packard, and Hewlett Packard Financial Services and/or their counsel; former local counsel to the Committee ("Devine Millimet"); and Mr. Conrad. At the UST's request, the Interim Trustee called each case individually as the cases had not been substantively consolidated. After concluding the meeting of creditors in eight of the eleven cases, Devine Millimet requested to be heard and indicated that attorney Robert Malone, former counsel to the Committee ("Attorney Malone") had been delayed due to the weather and requested a short postponement of the meeting to permit Attorney Malone to appear. Devine Millimet stated that Attorney Malone was on his way to the Creditors Meeting with original proxies for voting for a chapter 7 trustee on behalf of three creditors, Avnet, Ciprico, and Optical Laser, none of whom personally appeared at the Creditors Meeting but who had directed Attorney Malone to vote their proxies to elect Mr. Conrad as the permanent chapter 7 trustee. In response to the request, the Creditors Meeting was briefly adjourned. When the Creditors Meeting resumed, Attorney Malone was not present but appeared via telephone.[2] He indicated that he held original proxies for more than twenty percent of claims entitled to vote for a permanent trustee with instructions to vote for Mr. Conrad. Accordingly, he requested that an election be held. The transcript of the Creditors

Meeting indicates that the Interim Trustee responded as follows:

> I'm going to indicate that I believe that the creditors that are requesting the election, Avnet and Optical Laser are disqualified from doing that because there is a substantial preference exposure by those creditors. I have had my accountants look into that and the accountants are actually here today and can verify the preference analysis. They have even performed a new value analysis to give credit to the creditors and after the new value analysis was done there is still substantial preference both with Avnet, which I believe totals approximately $4.2 million dollars, that's Avnet. And Optical Laser, after crediting for new value, there is a preference of over $40,000, approximately $43,000. . . .

After the Interim Trustee's objection, an election was conducted. On behalf of Avnet, Ciprico, and Optical Laser, Attorney Malone voted claims totaling $5,803,330.20 for Mr. Conrad. Hewlett Packard and Hewlett Packard Financial Services, both through counsel, voted to retain the Interim Trustee. The Hewlett Packard entities had previously filed a proof of claim in the amount of $3,357,275.53. IBM, the only other unsecured creditor present, took no part in the trustee election.

Pursuant to Rule 2003(b) and (d)(2), the UST tabulated the votes and filed the Election Report with the Court. While the UST was preparing her report, but before it was filed, Mr. Conrad, through Devine Millimet, filed the Resolution Motion in the form of a preliminary objection and request for an order declaring him the elected permanent trustee in this case.[3]

---

**2.** Attorney Malone was unable to fly to Manchester for the Creditors Meeting due to severe fog conditions in Manchester that morning. However, he did participate in the Creditors Meeting by telephone while on an airplane on the tarmac at La Guardia Airport and later from the terminal.

**3.** Although the preliminary objection filed by Mr. Conrad is not styled as a motion, it does

The Court scheduled a procedural status hearing for December 15, 2005, regarding the resolution of the disputed election. Avnet appeared in support of the Resolution Motion and asked the Court to declare Mr. Conrad the elected permanent trustee. At the conclusion of the status hearing, the Court entered a scheduling order regarding the submission of offers of proof and memoranda of law (Doc. No. 380) (the "Scheduling Order"). The Interim Trustee submitted an affidavit to which she attached a spreadsheet from her accountants detailing the payments made to Avnet by the Debtors within ninety days of the bankruptcy filing as well as a transcript from the Creditors Meeting (Doc. No. 396) (the "Trustee's Offer of Proof"). Avnet requested that the Court take judicial notice of the Omnibus Objection. The Interim Trustee, Avnet, and Mr. Conrad all filed a memorandum of law. The Court held a final non-evidentiary hearing on December 29, 2005.[4]

At the beginning of the hearing on December 29, 2005, the Court stated on the record that based upon the prior history of this proceeding, the offers of proof and memoranda submitted by the parties, as well as a review of the Election Report, it had made certain preliminary determinations. Although the Court had previously ordered joint administration of the eleven debtors in this proceeding, the estates and the claim dockets remained separate. However, the schedules filed by the Debtors and the proofs of claim filed by many creditors appeared to reflect duplicate claims among various Debtors, most likely due to uncertainty over which entity owes what claim. The UST appointed one Interim Trustee for all of the debtors in this proceeding and the reasons supporting joint administration in the preceding chapter 11 continue to militate for jointly administered chapter 7 proceedings for the time being. Accordingly, the Court found that the eleven separate meetings of creditors held on November 28, 2005, were, for purposes of determining voting eligibility and electing a permanent chapter 7 trustee, effectively one meeting of creditors conducting a joint election. *See* Fed. R. Bankr.P.2009; *In re PL Liquidation Corp.*, 305 B.R. 629, 633 (Bankr.D.Del. 2004); *In re Ben Franklin Retail Stores, Inc.*, 214 B.R. 852, 858 (Bankr.N.D.Ill. 1997). No questions were raised concerning the solicitation of the Proxies by Avnet or the qualification of Ciprico, Optical Laser or the Hewlett Packard entities to vote in a trustee election in the amount of their respective proofs of claim.[5] It appeared to the Court that if Avnet was qualified to request an election and to vote for a permanent chapter 7 trustee under section 702 of the Bankruptcy Code,[6] then Mr. Conrad had been elected. It also appeared that if Avnet was not so qualified,

---

request confirmation that he was elected permanent chapter 7 trustee. Accordingly, the Court is treating the preliminary objection as a motion for resolution of a disputed election within the meaning of Rule 2003(d)(2).

**4.** In keeping with the *de facto* law of the case, the weather in Manchester on December 29, 2005, was again very foggy. However, all parties who might have traveled to the hearing by airplane appeared telephonically due to travel issues associated with the upcoming New Years weekend. Accordingly, no problems with foggy appearances occurred.

**5.** Although the Interim Trustee objected at the Creditors Meeting to the qualification of Optical Laser to vote, she did not pursue that objection at the hearing on the Resolution Motion and the Election Report.

**6.** In this opinion the words "Bankruptcy Code" shall mean title 11 of United States Code, § 101 *et seq.*, and the word "section" shall refer to the identified section of the Bankruptcy Code.

then no election had been properly requested and, pursuant to section 702(d), the Interim Trustee would serve as the trustee in this case. No party in interest objected to the foregoing preliminary conclusions by the Court. Therefore, the sole issue before the Court at the hearing was whether Avnet was qualified under section 702(a) to request an election and vote for a permanent trustee in these cases. At the conclusion of the hearing the Court took the matter under advisement.

## III. DISCUSSION

Section 702 of the Bankruptcy Code governs the election of a chapter 7 trustee.[7] Pursuant to section 702(a), a creditor is eligible to vote if the creditor (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim; (2) does not have an interest materially adverse to the interest of other eligible creditors; and (3) is not an insider within the meaning of section 101 of the Bankruptcy Code. The election of a trustee can be held only if requested by creditors holding at least twenty percent in amount of the types of claims entitled to vote and at least twenty percent in amount of the claims entitled to vote actually vote. The candidate that receives the

votes of creditors holding a majority in amount of votable claims is elected. 6 Lawrence P. King, *Collier on Bankruptcy* ¶ 702.01 (15th ed. rev.2005).

Although the UST raised numerous issues in the Election Report, the parties agreed that the determinative issue is whether Avnet was entitled to vote in the election. If Avnet was not eligible to vote pursuant to the terms of section 702(a), then the requirement of section 702(b), that the election be requested by creditors holding twenty percent in amount of claims eligible to vote, was not met as Avnet's claim, totaling $5,349,896.78, was necessary to satisfy the twenty percent requirement. No party alleged that Avnet is an insider. Accordingly, the Court must determine whether Avnet satisfied the requirements in the first two subsections of section 702(a).

### 1. Does Avnet Hold an "Interest Materially Adverse" Within the Meaning of Section 702(a)(2)?

■ Section 702(a)(2) disqualifies a creditor who holds "an interest materially adverse" to the interests of other unse-

---

7. Section 702 provides:

(a) A creditor may vote for a candidate for trustee only if such creditor—
(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
(3) is not an insider.
(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 per-

cent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.
(c) A candidate for trustee is elected trustee if—
(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and
(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.
(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

cured creditors from voting for a chapter 7 trustee. The words "interest ... adverse" are not defined in the Bankruptcy Code. However, both the House Report and the Senate Report, which were submitted to Congress prior to the enactment of the Bankruptcy Code in 1978, indicate that the concept involves a balancing of competing factors that in essence encompass a conflict of interest rule. *In re NNLC Corp.*, 96 B.R. 7, 9–10 (Bankr.D.Conn.1989) (citations omitted). Courts have concluded that creditors who have received preference payments hold an interest that is adverse to the interests of other unsecured creditors. *In re Williams*, 277 B.R. 114, 118 (Bankr.C.D.Cal.2002); *In re Centennial Textiles, Inc.*, 209 B.R. 31, 33 (Bankr. S.D.N.Y.1997); *NNLC Corp.*, 96 B.R. at 10; *In re Metro Shippers, Inc.*, 63 B.R. 593, 598 (Bankr.E.D.Pa.1986). Under a conflict of interest analysis, the participation of a potential preference defendant in choosing the trustee who will investigate, prosecute and settle any preference claim against it creates at least the appearance of impropriety.[8] It is axiomatic that the recovery of, or the failure to recover, a preference claim may impact the final distribution to creditors holding allowed unsecured claims. If Avnet received preferential transfers from the Debtors, its interests are adverse to creditors holding allowed unsecured claims.

The statutory language also imposes a materiality test to the disqualification of a creditor with an adverse interest.

Materiality is not expressly defined in section 702(a)(2). The statute provides, however, a methodology for determining whether an equity interest in the debtor held by an unsecured creditor is material. Such a creditor's equity interest is not material if it is not substantial in relation to that creditor's unsecured claim. 11 U.S.C. § 702(a)(2). In at least one reported case, a creditor that was alleged to have received a preferential transfer argued that it was not material when compared to the creditor's unsecured claim. The bankruptcy court rejected that argument holding that the materiality of a preferential transfer be determined solely upon the dollar amount of the alleged preference, without comparison to the creditor's unsecured claim. *NNLC Corp.*, 96 B.R. at 10. The Court agrees that materiality of an alleged preferential transfer for purposes of section 702 should be based upon the dollar amount of the alleged preference without regard to the creditor's unsecured claim. Unlike an equity interest, recovery of a preferential transfer is an asset of the bankruptcy estate which will affect distributions to unsecured creditors either through an increase in the transferee's claim under section 502(h) or the elimination of any distribution to the transferee under section 502(d). In this case the alleged preference may be as much as $4.2 million in an estate with total claims of approximately $22 million. Such a preference is material under any definition of the term.

---

8. In this case the Interim Trustee is a member of the UST's chapter 7 trustee panel for this district and Mr. Conrad is a former federal bankruptcy judge who currently is approved to serve as a trustee by the Administrative Office of United States Trustee. In addition, there is no allegation, or even a suggestion, that Avnet has any motive in seeking the election of Mr. Conrad other than the best interests of the bankruptcy estate. The Court stated on the record at the final hearing that it appeared that both trustee candidates were qualified and that the record in this disputed election guaranteed that the preference allegations would be fully investigated and resolved on the record by whomever becomes the permanent trustee. However, the language in section 702 does not provide any motive-based exception to the disqualifying effect of holding an interest materially adverse to the creditors of the estate.

■ It is not enough, however, to merely object to a creditor's claim in order to disqualify that creditor from participation in the selection of a permanent chapter 7 trustee. The objection cannot be frivolous. *In re Sforza,* 174 B.R. 656, 658 (Bankr. D.Mass.1994). It must be supported by more than mere suspicion and may not be interposed for an improper purpose. *In re USA Capital, LLC,* 251 B.R. 883, 889 (Bankr.D.Colo.2000); *Centennial Textiles,* 209 B.R. at 34. Some courts have concluded that the test of an objection to the claim of a creditor for purposes of qualification to vote under section 702 is "no more than the bona fide dispute assessment of § 303(b), and it may well be even less." *In re San Diego Symphony Orchestra Ass'n,* 201 B.R. 978, 983 (Bankr.S.D.Cal. 1996); *see also USA Capital,* 251 B.R. at 889.

■ In this case, the Interim Trustee based her objection to the qualifications of Avnet to vote for a permanent trustee on a preliminary investigation conducted by an experienced accounting firm whose retention had been authorized by the Court. Her accountants had reviewed all payments to Avnet during the ninety days before the filing of the bankruptcy petitions and, even after a new value analysis, found potential preferential transfers totaling $4.2 million. It was clear from the oral objection by the Interim Trustee at the Creditors Meeting that she had more than a mere suspicion of a preferential transfer. Her objection was based upon a detailed analysis by qualified accountants and not upon a hunch that a creditor that engaged in numerous large transactions with the Debtors within ninety days before the peti-

tion date must have received some preferential transfers.

Avnet contends that the Omnibus Objection was insufficient to establish a bona fide preference dispute because it simply stated a conclusion without any detail to establish the elements of a preferential transfer.[9] If the Omnibus Objection was the only objection on the record, the Court might agree with Avnet. *See San Diego Symphony Orchestra,* 201 B.R. at 984 (indicating an interim trustee is not required to prove all of the elements of a preference but must provide some evidence on each such element). However, the record in this case consists of the Omnibus Objection and the oral objection by the Interim Trustee at the Creditors Meeting. At best, the oral objection by the Interim Trustee supplements the Omnibus Objection. At worst, the oral objection alone could be sufficient without any written objection. *Sforza,* 174 B.R. at 658 (stating a clearly expressed oral objection can satisfy the requirements of section 702 even if no written objection has been filed). Regardless of the formality, form, or degree of detail raised in an objection to the qualifications of a creditor to vote in a trustee election, it is not necessary for the Court to determine the merits of the objection. In this initial stage of these chapter 7 proceedings, the Court need only determine if the objection to the qualification of a creditor to vote has a sufficient basis to rise above the mere suspicion threshold. *USA Capital,* 251 B.R. at 889; *In re Jotan,* 236 B.R. 79, 84 (Bankr.M.D.Fla.1999) (applying totality of the circumstances in balancing the factors which establish a ma-

9. In order to avoid a transfer as a preference under section 547(b) of the Bankruptcy Code, a trustee must establish (1) a transfer; (2) of the debtor's interest in property; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt; (5) made while the debtor was insolvent; (6) within the reachback period (ninety days or between ninety days and one year if a transferee is an insider); and (7) which results in greater distribution than in a hypothetical chapter 7 distribution.

terial adverse interest); *In re New York Produce Am. & Korean Auction Corp.*, 106 B.R. 42, 48 (Bankr.S.D.N.Y.1989) (indicating a trustee's written submission after a report of disputed election raised several genuine issues of material fact over the interests of the creditor); *In re Poage*, 92 B.R. 659, 666 (Bankr.N.D.Tex.1988) (holding that bare allegation of receipt of a preferential transfer without any factual support is insufficient).

Avnet contends that the Interim Trustee did not provide sufficient detail even in her oral objection. The Court disagrees. The Interim Trustee adequately described at the Creditors Meeting the due diligence which led to her conclusion that Avnet had received $4.2 million in preferential transfers. The Trustee's Offer of Proof provides sufficient indicia of the basis for her oral objection.[10] At the time of the section 702 election the Interim Trustee had established a sufficient basis for her objection to the qualification of Avnet to request an election and to vote for a trustee under section 702(a)(2).

### 2. Does Avnet Hold an Allowable Claim Within the Meaning of Section 702(a)(1)?

The Interim Trustee also contends that Avnet is disqualified to vote for a permanent chapter 7 trustee under section 702(a)(1) because it does not have an allowable claim by virtue of section 502(d). Section 502(d) provides that a bankruptcy court must disallow the claim of any entity from which a preferential claim may be recovered, unless the entity has paid the amount of the preference to the estate. The Interim Trustee contends that the language of section 502(d) is mandatory and because Avnet's claim is subject to disallowance, it is not "allowable" within the meaning of section 702(a)(1). *Centennial Textiles*, 209 B.R. at 33. Avnet disputes the Interim Trustee's contention and argues that no determination on the merits of the Interim Trustee's preference objection has been made and, therefore, at the time of the election no preference was recoverable from Avnet.

While the Court believes that Avnet has the better argument on the impact of section 502(d) on the qualification of a creditor to elect a trustee, it need not decide the issue. For the reasons set forth above, the Interim Trustee has established a sufficient basis for the Court to conclude Avnet holds an interest materially adverse to the other unsecured creditors. Accordingly, Avnet was disqualified from participating in a trustee election, even if its claim is allowable for purposes of section 702(a)(1).

### 3. Was Avnet Deprived of Due Process of Law?

■ At the final hearing Avnet argued that the failure of the Interim Trustee to detail the facts that support her preference allegation prior to the time of the election deprived it of due process of law. Avnet suggested that interim trustees could simply use a hastily formed objection to thwart the right of unsecured creditors

---

**10.** While the Interim Trustee's written and oral objections did not specifically outline all of the elements of a preference claim, it would appear undisputed that the Debtors transferred money to Avnet within ninety days of the filing while the Debtors were presumed insolvent. The accountants' spreadsheet listed the dates of all invoices and payments as well as the payment amounts which would assist in establishing that such payments were on account of antecedent debt. The Court can take judicial notice of the fact that the Interim Trustee has no funds on hand to distribute to chapter 7 creditors at this time which would suggest that Avnet's receipt of payments during the preference period would result in it receiving a greater distribution than it would in chapter 7.

to elect a permanent trustee of their choosing. A threshold implication of Avnet's argument is that the Interim Trustee lacked standing to object to the qualifications of an unsecured creditor to elect a permanent trustee. Accordingly, if the Interim Trustee lacked standing to object to Avnet's right to vote for a permanent trustee, Mr. Conrad would be elected because no other party in interest raised an objection. *See Kehoe v. Schindler (In re Kehoe)*, 221 B.R. 285, 289 (1st Cir. BAP 1998) (concluding that a chapter 7 debtor lacked standing to object to a creditor's qualifications to vote under section 702). Although one court has held that an interim trustee lacks standing to challenge the election of a permanent trustee by creditors, *In re G.I.C. Gov't Sec., Inc.*, 56 B.R. 105, 108 (Bankr.M.D.Fla.1985), virtually all of the reported decisions have found that an interim trustee has standing to object to the qualification of a creditor under section 702. *New York Produce*, 106 B.R. at 46 (stating an interim trustee is a fiduciary and is best able to ascertain initially whether a creditor has a material adverse interest); *NNLC Corp.*, 96 B.R. at 9 (indicating an interim trustee is the optimal party to object to a creditor's claim for voting purposes); *Poage*, 92 B.R. at 663 (stating the interim trustee is the representative of the estate and the purpose behind section 702 is to protect the bankruptcy estate); *Metro Shippers*, 63 B.R. at 598 (indicating an interim trustee's potential loss of opportunity to administer the bankruptcy estate provides standing).

This Court agrees with the decisions in *New York Produce, NNLC Corp.* and *Poage* that the Interim Trustee is an in-place fiduciary who is in an unique position to determine if a particular creditor is not qualified to vote under section 702. If the Interim Trustee objected to the qualifications of a creditor solely for the purpose of obtaining the opportunity to administer a

bankruptcy estate, she would be in breach of her fiduciary responsibilities to the estate. Creditors are protected from being disenfranchised of their right to elect a trustee by the substantive provisions of section 702 of the Bankruptcy Code and the procedural protections in Rules 2003, 2006(d), and 2009. Accordingly, the Court finds that the Interim Trustee has standing under section 702 to object to Avnet's qualifications to vote for a permanent chapter 7 trustee.

■ Avnet contends that the Interim Trustee's Omnibus Objection filed approximately one hour before the Creditors Meeting and her oral objection stated on the record at the Creditors Meeting deprived it of due process of law because it did not contain sufficient detail on the elements of a preference and did not provide Avnet with sufficient notice of the Interim Trustee's objection. For the reasons stated above, the Court finds that the Interim Trustee stated sufficient detail on the record at the Creditors Meeting to establish the basis for her belief that Avnet had received approximately $4.2 million in preferential transfers. However, even if the Interim Trustee's objection lacked sufficient detail, Avnet's substantive rights were not affected because the vote that Avnet sought actually occurred. Due process considerations do not necessitate any notice to a creditor that another party may object to their voting for a trustee at a meeting of creditors. Due process does require that the disputed election be resolved by the bankruptcy court after notice and a hearing.

In this case, the UST complied with the requirements of Rule 2003(b)(3) and (d)(2) to tabulate the election results for each alternative at the Creditors Meeting, file the Election Report with the Court, and serve a copy on any party in interest who

requests the report. Neither the UST nor the Interim Trustee took, or could have taken, any action that in any way interfered with or altered Avnet's right to vote for a permanent chapter 7 trustee, subject only to the requirements of section 702. Avnet's rights could only be determined by this Court, after notice and a hearing. *Williams*, 277 B.R. at 120. The question, therefore, is did this Court afford Avnet due process.

The proper time to determine the universe of creditors entitled to vote to elect a permanent chapter 7 trustee is as of the time of the election. *Id.* at 117. A delay in the election or appointment of a permanent chapter 7 trustee could be detrimental to the bankruptcy estate because the administration of the case may effectively stop until the identity of the permanent trustee is determined. *Id.* at 120. Therefore, "a trustee election dispute requires a bankruptcy court to balance the need for an accurate resolution of fact-based questions at the initial stage of a case with the need for speedy resolution of the dispute [recognizing] that it is both undesirable and unworkable to turn a trustee election into a full scale trial." *In re Am. Eagle Mfg., Inc.*, 231 B.R. 320, 330–31 (9th Cir. BAP 1999). The provisions of section 702 and Rule 2003 "are designed for prompt, streamlined and effective selection of a trustee. The selection process is designed to move swiftly-but, leavened with ample and effective safeguards to satisfy principles of due process." *USA Capital*, 251 B.R. at 888.

In balancing the need for a prompt resolution of the election dispute with requirements of due process, this Court held a procedural status conference on December 15, 2005, only three days after the filing of the Election Report. At that hearing the Court stated that it did not see the need for a full evidentiary hearing absent a material factual dispute on the limited issues before the Court. On December 15, 2005, the Court entered the Scheduling Order requiring the Interim Trustee to file a written offer of proof on or before December 20, 2005, any other party to file a written offer of proof on or before December 27, 2005, and all parties to file memoranda of law on or before December 28, 2005. The final hearing was scheduled for December 29, 2005. No party objected to the deadlines in the Scheduling Order at the procedural status conference or before or at the final hearing.

The limited issue before the Court at the final hearing was whether Avnet was disqualified from voting for a permanent chapter 7 trustee by virtue of the Interim Trustee's objection to Avnet's claim based upon its alleged receipt of preferential transfers. At the final hearing, Avnet relied on its contention that the Interim Trustee's objection contained insufficient detail. However, the purpose of the hearing on the disputed election was not to resolve the merits of any objection to Avnet's claim. The purpose of the hearing was simply to determine whether the Interim Trustee had sufficient grounds to object to Avnet's claim based on the receipt of preferential payments. Avnet simply has not raised any credible issue as to why or how the Interim Trustee's objection denied it an adequate opportunity to raise doubt over the basis for her objection. Avnet has not articulated any reason why it was unable to properly contest its qualification to vote within the terms of the Scheduling Order. The procedures employed by the Court provided Avnet with due process of law in determining whether it was qualified to vote for a permanent chapter 7 trustee.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court will issue a separate order (1)

sustaining the Interim Trustee's objection to Avnet's qualification to request an election and vote for a permanent chapter 7 trustee under section 702 of the Bankruptcy Code and (2) declaring that the Interim Trustee shall serve as the chapter 7 trustee in these jointly administered cases because no chapter 7 trustee was elected at the Creditors Meeting held on November 28, 2005. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.